**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHONG CHEN, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | No. 11-2356 |
|     Defendant. | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                                                       **February 14, 2012**

      Plaintiff Chong Chen sued Defendant Allstate Insurance Company ("Allstate") on April 4, 2011 in connection with property damage Chen incurred as a result of a fire at his neighbor's property. Chen alleges breach of contract for non-reimbursement of Chen's property damage. Presently before the Court is Allstate's motion for summary judgment. For the reasons that follow, the Court grants Allstate's motion.

**I.    BACKGROUND**

    **A.    Insurance Policy**

      Allstate issued a homeowners insurance policy to Chen, which was in effect on February 19, 2010. (*Id.* ¶ 7.) The policy was a Deluxe Homeowners Policy, which indicated Chen as the named insured and the location of the property insured as 753 Jericho Road, Philadelphia, Pennsylvania ("the Jericho property"). (Compl. Ex. B [Chen Renewal, May 18, 2009 to May 18, 2010] at 5.) On February 19, 2010, the Jericho property was damaged by a fire that started at his neighbor Shan Qiao Zhang's property at 751 Jericho Road. (Def.'s Statement of Undisputed Facts in Supp. of Mot. for

Summ. J. [Def.'s SOF] ¶ 4.) Chen submitted a property damage claim to Allstate on February 24, 2010. (*Id.* ¶ 9.)

The policy provided a reimbursement limit of $105,364 in personal property protection and $150,520 in dwelling protection. (*Id.* at 6.) According to the policy, "the dwelling is of Brick construction and is occupied by 1 family." (*Id.*) The Policy Declarations define the "residence premises" as "the dwelling, other structures and land located at the address stated on the Policy Declarations." (Def.'s Mot. for Summ. J. Ex. 2A [Deluxe Homeowners Policy pt. 1] at 19 ¶ 7.) "Dwelling" is defined to mean a "one, two, three or four family building structure identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence." (*Id.* at 19 ¶ 12.) "Business" is defined as:

> a) any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. . . .
> b) any property rented or held for rental by an insured person. Rental of your residence premises is not considered a business when:
>    1) it is rented occasionally for residential purposes;
>    2) a portion is rented to not more than two roomers or boarders; or
>    3) a portion is rented as a private garage.

(*Id.* at 18-19 ¶ 7.) The policy also includes coverage details and exclusions. Under Section I, Property Protection, the policy provides coverage to dwellings, including attached structures, but not to other structures used in whole or in part for business. (*Id.* at 22.)

**B.   Chen's Residency**

Chen purchased the Jericho property in 2005. He gave multiple and, at times, conflicting, statements regarding where Chen was actually living, how much time he spent at the Jericho property, when he was renting the Jericho property out, and why he purchased the property. Chen

made statements at an interview on June 14, 2010 with Allstate related to his claim (Def.'s Mot. for Summ. J Ex. B [Chen Interview with Allstate]), at his Examination Under Oath ("EUO") on August 25, 2010 (Def.'s Mot. for Summ. J. Ex. C [Chen EUO]), and at his deposition on December 6, 2011 (Def.'s Mot. for Summ. J. Ex. 8 [Chen Dep.])

Chen's loan application stated that the property would be a "primary residence" and that he intended to occupy the property as his primary residence. (Def.'s SOF ¶ 35; Def.'s Mot. for Summ. J. Ex. 9 at 1, 4.) At his deposition, Chen testified that he did not recall telling anyone at the mortgage company that the Jericho property would be his primary residence or that he planned to rent it out. However, when asked if he identified the Jericho property as a primary residence to get a lower interest rate, he stated, "I thought so. I bought it to get low interest rate. I rent it so I can pay it." (Chen Dep.) However, at his EUO, when asked about his statement that the Jericho property was to be his primary residence, he responded, "originally it was the case, primary." (Chen EUO). Upon further questioning, he clarified that even when he first bought the Jericho property, he did not spend every night there. On the contrary, "No, not every day. Once in a while." (*Id.*)

Chen stated that after he bought the Jericho property, his mortgage company arranged for him to obtain his Allstate policy. In fact, he testified that he did not apply for an insurance policy and that he did not know who his insurance company was, stating, "The bank did not tell me. The day I bought a house, they insure for us." (Chen Dep.) Chen could not recall receiving documentation each year from Allstate or paying premiums.(*Id.*)

After the fire, Chen worked with a public adjuster regarding the fire loss at the Jericho property. (*Id.*) The public adjuster's documents described the Jericho property as rental property. However, Chen testified that he did not remember telling the public adjuster that it was rental, noting

that his son or daughter-in-law spoke with the adjuster, though he did identify his signature on the documents. (*Id.*)

Shortly after purchasing the property in 2005, Chen began renting out two of the three bedrooms. Chen made multiple inconsistent statements about how soon he began renting out the bedrooms. Although a lease agreement existed from September 2008 to September 2009, the tenants continued living at the Jericho property after their lease ended. (Chen Interview with Allstate.) While the lease indicated that it was for the first floor, Chen said that the tenants were allowed to go upstairs and downstairs and that the tenants' two bedrooms were upstairs. (*Id.*) Chen did not know the names of his tenants or how many tenants were living in the Jericho property, though he said, "sometimes three, sometimes four." (Chen EUO; Chen Dep.) His tenants generally transferred rent money into Chen's bank account and sometimes wrote him a check. (Chen Dep.) Chen's tenants paid the utility bills on the property. (Chen EUO; Chen Dep.) There were tenants at the Jericho property at the time of the fire in February 2010, and they moved out the day after the fire. (Chen Interview with Allstate; Chen Dep.)

Chen's tax returns from 2006 through 2010 list rental income from the Jericho property. (Chen Dep.) He testified that he took a business deduction for the Jericho property because, "I rent it out. That's for business." (*Id.*) When asked about a 2010 City of Philadelphia Business Privilege Tax form, again Chen testified that it was based on the rental income from the Jericho property. (*Id.*) In response to questioning on Chen's statements of 100 percent business use, Chen said, "most of the time I rent it out. We stop because we need repairs and stuff. Sometimes tenants move out. We don't have tenants move in immediately, so there are gaps there." (*Id.*) Chen testified that he did not tell the accountant that he used one room in the Jericho property for his personal purposes, rather,

he only told the accountant of the rent he collected. (*Id.*)

Chen also gave multiple conflicting statements about how much time he spent at the Jericho property. He initially told Allstate that when he first bought the Jericho property, he moved into it and lived there full-time. (Chen Interview with Allstate.) He described living in the back bedroom for three or four days a week with his girlfriend, and he said that he divided his time "half and half" between Maryland and the Jericho property. (*Id.*) At the time of the fire in February 2010, Chen said he was spending Thursdays through Mondays at the Jericho property. (*Id.*) At the EUO, on the other hand, Chen said that when he first bought the property in 2005, he was not "looking for another place to live" and that it was only for the future "in case [he] may move there." (Chen EUO.) He moved his clothing and bedding into one of the bedrooms, which had a lock on the door, and he rented out the other two bedrooms. (*Id.*) After purchasing the property, he continued living in Maryland but would visit the property "now and then." (*Id.*) Upon further questioning, he clarified "maybe once a month. Maybe once every two or three months. I can't remember." (*Id.*) He said that in January and February of 2010, he would visit the property two to three days a week, though he also said that prior to the fire, he was last at the property in January 2010. (*Id.*) At his deposition, Chen said that he purchased the property for future use, in case he wanted to live there after retirement "when my sons don't want me and if I have to move." (Chen Dep.) When asked how often he would visit the Jericho property, he stated, "[i]t's not very unfrequent. It's very hard to say. Sometimes I can go a week—once a week. Sometimes I go to see several weeks—once every few weeks. It's irregular. Irregular. I go to see it irregular." (*Id.*) He testified later, "[m]ost of the time I go to see the house once a week except when I'm sick and I do some other things." (*Id.*) He testified that when he would visit, "[u]sually I come Saturday. I leave on Sunday." (*Id.*)

After the fire, when dealing with the insurance claims process, Chen gave Allstate a Maryland address as where he was living, and he initially said that he had lived there "about three years, four years." (Chen Interview with Allstate.) At the EUO and his deposition, Chen said that he had lived at the Maryland address for "about ten years" with his son who owned that property. (Chen EUO; Chen Dep.) Chen's driver's license, car registration, car insurance, bank, and credit card were all registered to the Maryland address. (Chen Interview with Allstate; Chen EUO; Chen Dep.) Chen testified at his deposition, "I do not receive letters using Philadelphia's address." (Chen Dep.) Chen paid his income taxes as a Maryland resident, and he stated that his primary residence is "where he pays his tax." (Chen Interview with Allstate.) Chen had also owned and worked at a restaurant in Maryland since 1997. (Chen Dep.) He had never been employed in Pennsylvania. (*Id.*)

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d

768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.    DISCUSSION**

Allstate contends that it is entitled to summary judgment because it did not breach the insurance policy by denying Chen's claim for property damage. Allstate argues that the damage to the Jericho property is not covered because the property was not Chen's residence. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 14-22.) Chen, by contrast, contends that the policy does not define "primary residence" and "principally used as a private residence," nor does it exclude coverage for primary residences that are also used partially as rental property. Chen also argues that the policy does not exclude coverage for insureds who travel and work away from their primary residences. (Pl.'s Mem. of Law in Supp. of Pl.'s Resp. to Mot. for Summ. J. [Pl.'s Resp.] at 19-24.) Furthermore, Chen argues that he provided Allstate with a signed statement verifying that the Jericho property was used as his primary residence. (*Id.* at 20.)

Pennsylvania law, which governs the interpretation of Chen's homeowners insurance policy, "provides several well-settled principles governing the interpretation of insurance policies." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004). First, the task of interpreting the policy is generally performed by the court, rather than the jury, and the goal of that task is to ascertain the intent of the parties through the contract's language. *Id.* (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). Second, when "an insurance policy provision is ambiguous, it is to be 'construed against the insurer and in favor of the insured.'" *J.C.*

7

*Penney Life Ins. Co.*, 393 F.3d at 363 (quoting *McMillan v. State Mut. Life Assur. Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir. 1990)). A provision is ambiguous when the language, viewed in the context of the entire policy, is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (internal quotation marks omitted). Third, when an insurance contract's language is unambiguous, the court must enforce the language and avoid creating ambiguities where none exist. *Id.* "Thus, '[w]here the policy contains definitions for the words contained therein, the court will apply those definitions in interpreting the policy.'" *Id.* (quoting *Monti v. Rockwood Ins. Co.*, 450 A.2d 24, 25 (Pa. Super. Ct. 1982)). Courts should not, "under the guise of judicial interpretation, . . . expand the coverage beyond that as provided in the policy." *Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984).

The provisions of the policy that deal with definitions relevant to residence and rental property are as follows:

> Definitions Used In This Policy
> * * *
> 6.  "Business"—means:
>     a)  any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. . . .
>     b)  any property rented or held for rental by an insured person. Rental of your residence premises is not considered a business when:
>         1)  it is rented occasionally for residential purposes;
>         2)  a portion is rented to not more than two roomers or boarders; or
>         3)  a portion is rented as a private garage.
> 7.  "Residence premises"—means the dwelling, other structures and land located at the address stated on the Policy Declarations.
> * * *
> 12. "Dwelling"—means a one, two, three or four family building structure identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.
> * * *
> Property We Cover Under Coverage A [Dwelling Protection]

      1.    Your dwelling including attached structures.
\* \* \*
Property We Do Not Cover Under Coverage B [Other Structures Protection]
      1.    Structures used in whole or in part for business purposes.

(Deluxe Homeowners Policy pt. 1 at 18-22.)

According to the policy, Chen is entitled to coverage if the Jericho property is a dwelling where Chen resides and that is principally used as a private residence. If the Jericho property is used for business purposes, then Chen is not entitled to coverage from Allstate. While the Court must determine whether Chen satisfies the residency requirement, the Court finds that the policy language is clear that Plaintiff's residency is a condition precedent to insurance coverage. *See Certain Underwriters at Lloyd's London, England v. Clark*, Civ. A. No. 97-6674, 1998 WL 404807, at \*6 (E.D. Pa. July 16, 1998) (holding residency a "condition precedent" to coverage in insurance policy solely covering "residence premises"). Under Pennsylvania law, "construction of the term 'resident' in an insurance policy is a matter of law." *Mu'Min v. Allstate Property & Cas. Ins. Co.*, Civ. A. No. 10-7006, 2011 WL 3664301, at \*9 (E.D. Pa. Aug. 17, 2011) (citing *Nationwide Mut. Ins. Co. v. Budd-Baldwin*, 947 F.2d 1098, 1100 (3d Cir. 1991). An individual can have more than one residence. *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1439 (3d Cir. 1991) (citing *McCarthy v. Phila. Civil Serv. Comm'n*, 339 A.2d 634, 636 (Pa. 1975)). However, Pennsylvania courts generally recognize "the classical definition[]" of the word "residence" as requiring living in a "particular place." *Krager v. Foremost Ins. Co.*, 450 A.2d 736, 737-38 (Pa. Super. Ct. 1982). "A person's intentions, whether intent to remain in a location or intent to move on elsewhere, are irrelevant in the residency analysis. Similarly, a person's own identification of the place she calls 'home' or her 'residence' is not determinative." *Allstate Ins. Co. v. Naskidashvili*, Civ. A. No. 07-

4282, 2009 WL 399793, at *3 (E.D. Pa. Feb. 16, 2009) (citations omitted). Instead, "residency" requires, "at the minimum, some measure of permanency or habitual repetition." *Erie Ins. Exchange v. Weryha*, 931 A.2d 739, 744 (Pa. Super. Ct. 2007). Courts consider where an individual sleeps, eats, receives mail, and keeps personal possessions in determining the individual's residence. *Naskidashvili*, 2009 WL 399793, at *3. "[W]hen a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he lives that is his residence." *Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 560 (3d Cir. 2008) (citing *Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 545 A.2d 343, 346 (Pa. 1988)).

Chen argues that the Jericho property is his primary residence because he visited it every week and had a room that he stayed in. (Pl.'s Resp. at 23.) Chen also notes that the property was listed as his primary residence on his loan application, and he emphasizes that he provided Allstate with a signed statement verifying that the Jericho property was used as his primary residence. (*Id.* at 20, 23.) Regardless of Chen's assertions—signed statements or otherwise—Chen's own identification of his residence "is not determinative" in the residency analysis. *Naskidashvili*, 2009 WL 399793, at *3. Instead, the Court must look to objective indicators to determine where Chen actually lived. *See Gardner*, 544 F.3d at 560. Chen clearly did not use the Jericho property as his residence. Chen indicated that he purchased the property to possibly live there in the future. Chen listed the Maryland address for his driver's license, car registration, car insurance, bank statements, and credit card, and he paid taxes as a Maryland resident, and he said that he did not receive mail at the Jericho property. Furthermore, despite the policy's requirements that a dwelling be "principally used as a private residence," soon after purchasing the property, Chen began renting out two of the three bedrooms to tenants for rental income. As of the date of the fire, tenants occupied two of the

bedrooms. Chen's tenants paid all of the utilities on the Jericho property. Chen's tax returns reported the Jericho property as 100 percent for business use. Finally, Chen, at most, only visited the property on weekends. During the rest of the week, Chen would live in Maryland. His statements of weekly visits admit the absence of "permanency or habitual repetition" required for residency. *Weryha*, 931 A.2d at 744. Viewing all the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact that Chen did not use the Jericho property as a residence.

Chen claims, nevertheless, that the policy fails to contain an exclusion for premises that are primary residences, but are also used for rental income. This argument is without merit because the policy only provides coverage for residences and not for businesses. While there is an exception from the business definition for certain rental properties, that is only when the property is "rented occasionally" or to "nor more than two roomers," (*id.* at 19 ¶ 6(b)) but here, Chen's rental of the Jericho property fails to satisfy that exception.

In sum, the Court finds no genuine issue of material fact exists as to Chen's breach of contract claim. The policy unambiguously states that insurance coverage of the property is dependent on Plaintiff residing in it and using it principally as a private residence. The undisputed facts in the record demonstrate that the Jericho property was not Chen's residence, as defined under Pennsylvania law. Accordingly, the Court grants Allstate's motion for summary judgment on the breach of contract claim. Given the dismissal of the first count, Chen's claim for punitive damages must also be dismissed.

### IV.  CONCLUSION

In light of the foregoing, the Court finds no basis on which Chen may sustain any of his

causes of action against Allstate. Accordingly, Defendant's motion for summary judgment is granted.

An appropriate Order will be docketed separately.